MARIA C. RODRIGUEZ (SBN 194201)
mcrodriguez@mwe.com
CHRISTOPHER A. BRAHAM (SBN 293367)
cbraham@mwe.com
ASHLEY ATTIA (SBN 311779)
aattia@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile: +1 310 277 4730

Attorneys for Defendant
CIRCLE K STORES, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIFFANY MCDONALD, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>  v.<br><br>CIRCLE K STORES, INC.; and DOES 1 through 20, inclusive,<br><br>          Defendant. | CASE NO. **'22CV495 L AGS**<br><br>**DEFENDANT CIRCLE K STORES, INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Complaint Filed: April 28, 2021<br>FAC Filed: July 26, 2021<br>SAC Filed: September 29, 2021 |

NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant CIRCLE K STORES, INC. ("Circle K" or "Defendant"), by and through its attorneys of record, hereby removes the above-entitled action pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1332(d)(2).

This Court has original jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The alleged amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are at least three thousand four hundred twenty-one putative class members, and at least one plaintiff is a citizen of a different state than at least one of the defendants, as discussed further below.

## PROCEDURAL SUMMARY

1. On or about April 28, 2021, Plaintiff Tiffany McDonald ("Ms. McDonald") commenced an action against Circle K in the Superior Court of California, County of San Diego, in her Complaint entitled *Tiffany McDonald vs. Circle K Stores, Inc., and DOES 1 – 20, inclusive*, case number 37-2021-00018913-CU-OE-CTL ("Complaint").

2. Ms. McDonald mailed Circle K's counsel the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment, ADR Information, and Stipulation to Use ADR with an Acknowledgment of Receipt Form on May 14, 2021. Attached as **Exhibit A** is a true and correct copy of the Complaint. *See* **Exhibit B** for true and correct copies of the Summons and all other papers McDonald served on Circle K. On July 26, 2021, Ms. McDonald filed her First Amended Class Action Complaint ("FAC"). *See* **Exhibit C** for a true and correct copy of the FAC Ms. McDonald served on Circle K. On September 29, 2021, Ms. McDonald filed her Second Amended Class Action Complaint ("SAC"). *See* **Exhibit D** for a true and correct copy of the SAC Ms. McDonald served on Circle K. At all times, Circle K timely filed Answers to the Complaint, FAC, and SAC.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## BASIS FOR JURISDICTION

3. This Court has original jurisdiction over this action on the basis of CAFA. At least one class member, Ms. McDonald, is a citizen of a state different from that of any one defendant, Circle K. The proposed class exceeds 100 members, and the amount in controversy exceeds $5,000,000, exclusive of interests and costs. Therefore, the action is removable pursuant to 28 U.S.C. § 1441(a) because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). Furthermore, no defendant identified in the Complaint is a state, officer of a state, or a government agency. 28 U.S.C. § 1332(d)(5).

## THE PARTIES' DIVERSITY OF CITIZENSHIP

4. At all relevant times, Ms. McDonald is and has been a citizen and resident of the State of California in San Diego, California.

5. At all relevant times, Circle K has been a citizen of the State of Texas and Arizona within the meaning of 28 U.S.C. § 1332(c)(1), because it is now and was at all material times incorporated under the laws of the State of Texas and maintained its principal place of business in the State of Arizona. To be clear, Tempe, Arizona is the site of Circle K's corporate headquarters and Circle K's core executive and administrative functions are directed from Tempe, Arizona. Accordingly, Circle K's principal place of business is in Arizona under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

6. Pursuant to 28 U.S.C. § 1441(b)(1), all potential "Doe" defendants shall be disregarded for purposes of removal. To that end, the allegations in the SAC with respect to the potential "Doe" defendants are too vague as to their identity or relationship to the claims. (**Exhibit D** – SAC, ¶12).

7. Thus, under CAFA, diversity of citizenship exists between Ms. McDonald and one named defendant, Circle K.

///

///

## NUMEROSITY OF CLASS MEMBERS

8. Although the SAC does not allege a specific number of class members, it defines the class as "[a]ll California citizens currently or formerly employed by Defendants as nonexempt employees in the State of California at any time between January 1, 2021 and the date of class certification." (**Exhibit D** - SAC, ¶ 20). The SAC also does not allege a specific number of subclass members but defines the "Waiting Time Subclass" as "[a]ll members of the Class who separated their employment with Defendant at any time between January 1, 2021 and the date of class certification…" (**Exhibit D** - SAC, ¶ 21).

9. Circle K has employed approximately 3,421 non-exempt employees in the State of California at all material times since January 1, 2021, i.e. – putative class members. Therefore, the total number of class members is well in excess of 100.

## THE AMOUNT IN CONTROVERSY

10. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Circle K is not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). A defendant can establish the amount in controversy by the allegations in the complaint, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by the plaintiff exceeds the jurisdictional minimum. *Singer*, 116 F.3d at 377; *Conrad Assoc.*, 994 F. Supp. at 1198.[1]

---

[1] A notice of removal need only provide a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because § 1446 tracks Rule 8's liberal pleading standard, a notice of removal need only allege the grounds plausibly and need not be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 554 (2014) ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); *see also Roa v. TS Staffing Servs., Inc.*, Case No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2

11.     In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the complaint, not what the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

12.     Ms. McDonald does not pray for a specific dollar amount in her SAC. When the amount in controversy is not readily apparent from the complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer*, 116 F.3d at 377 (9th Cir. 1997)). Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000). The Court should also include requests for attorneys' fees in determining the amount in controversy. *Fritsch v. Swift Transportation Company of Arizona*, LLC, 899 F.3d 785, 794 (2018) (holding that "future attorneys' fees should be included in the amount in controversy.").

13.     Circle K denies Ms. McDonald's claims in their entirety and asserts that they are not amenable to class treatment, but provides the following analysis of potential damages, without admitting liability, in order to demonstrate that Ms. McDonald's SAC puts a sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(d).

14.     On or around April 5, 2022, Circle K ascertained, based on review of its internal records, that the average tenure of putative class members during the class period is approximately 58 workweeks.

///

---

(C.D. Cal. Jan. 22, 2015) ("The 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply equally to all CAFA allegations and not just the amount-in-controversy requirement.").

15. On or around April 8, 2022, Circle K ascertained, based on review of its internal records, that the collective average hourly pay rate (based on the last wage rate) for all putative class members during the class period is approximately $14.86 per hour. The putative class members were paid on a biweekly schedule.

16. On or around April 8, 2022, Circle K ascertained, based on review of its internal records, that there was approximately 200,590 total workweeks at issue during a 4-year year liability period for the unpaid wage claims.

17. On or around April 8, 2022, Circle K ascertained, based on review of its internal records, that there were approximately 2,126 putative class members that terminated their employment with Circle K.

18. Based on a review of Ms. McDonald's records, she worked approximately 8 hours per day, and 4.87 days per week. Circle K will reasonably assume that Ms. McDonald is a typical putative class member and that all other putative class members typically worked 8 hours per day, and 4.87 days a week.

19. Ms. McDonald's first cause of action is for failure to pay minimum wages. (**Exhibit D** - SAC, ¶ 40). Ms. McDonald's second cause of action is for failure pay overtime. (**Exhibit D** - SAC, ¶ 52). Ms. McDonald's third cause of action is for failure to provide meal periods (**Exhibit D** - SAC, ¶¶ 61, 63). Ms. McDonald's fourth cause of action is for failure to permit rest breaks (**Exhibit D** - SAC, ¶¶ 68, 70). Ms. McDonald's sixth cause of action is for failure to failure to provide accurate itemized wage statements (**Exhibit D** - SAC, ¶ 82). McDonald's seventh cause of action is for failure to pay all wages due upon separation of employment (**Exhibit D** - SAC, ¶ 88). However, Ms. McDonald's SAC does not allege the frequency, duration of time, or total amount owed to the putative class members for any of the above alleged violations.

20. In measuring the amount in controversy for removal purposes when the operative complaint is silent on violation rates, California Federal courts typically

- 5 -
NOTICE OF REMOVAL

apply a 20% violation rate. *Mendoza v. Savage Servs. Corp.*, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019).

21. Ms. McDonald's fourth cause of action is for failure to permit rest breaks. Ms. McDonald alleges "During the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods." (**Exhibit D** - SAC, ¶ 68).

22. Plaintiff argues "As a result of Defendants' failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant rest period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation." (**Exhibit D** - SAC, ¶ 71).

23. Based on the reasonable estimate that there are 200,590 total work weeks for the putative class members within the class period, Ms. McDonald's fourth cause of action for **failure to permit rest breaks implicates at least $2,903,267.45** in controversy (200,590 total workweeks x 4.87 average days worked per week x $14.86 rest premium based on putative class members' last average wage rate x 20% violation rate).

24. Ms. McDonald's sixth cause of action is for failure to provide accurate itemized wage statements. Ms. McDonald alleges: "During the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members. The deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." (**Exhibit D** - SAC, ¶ 82).

25. Ms. McDonald further alleges that "Plaintiff and Class Members are entitled to recover from Defendants the greater of all actual damages caused by

Defendants' failure to comply with Labor Code § 226(a) or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars ($100.00) per employee for each violation in subsequent pay periods in an amount not exceeding four thousand dollars ($4,000.00) per employee, plus attorneys' fees and costs." (**Exhibit D** - SAC, ¶ 84).

26.   Based on a putative class size of 3,421 individuals and approximately 79,076 workweeks at issue during the wage statement liability period (i.e. – April 28, 2020 to present), along with each putative class member working on average a total of 58 workweeks, Ms. McDonald's sixth cause of action for failure to provide accurate **itemized wage statements implicates at least $773,655 in controversy** (1 workweek for each of the 3,421 proposed class members x initial $50 violation x 20% violation rate + all remaining 75,655 workweeks within this period, divided in half for total bi-weekly pay periods x subsequent violation of $100 x 20% violation rate).

27.   Ms. McDonald's seventh cause of action is for failure to pay all wages due upon separation of employment. Ms. McDonald alleges that "[d]uring the relevant time period, Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, proper vacation pay at the regular rate, minimum wage and overtime compensation, meal period premiums, and rest period premiums either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ." (**Exhibit D** - SAC, ¶ 88).

28.   She further alleges that "[p]ursuant to Labor Code § 203, the Waiting Time Subclass is entitled to recover from Defendants the statutory penalty, which is defined as the Waiting Time Subclass members' regular daily wages at their regular hourly rate of pay for each day they were not paid, up to a maximum of thirty (30) days." (**Exhibit D** - SAC, ¶ 91).

29.   Based on an estimate that 2,126 putative class members, hired on or after April 28, 2017, were terminated from employment with Circle K within the class period, Ms. McDonald's seventh cause of action for failure to **failure to pay all wages**

**due upon separation of employment implicates at least $1,516,433.28 in controversy** (2,126 putative class members terminated x $14.86 hourly rate based on putative class members' last wage rate average x 8 average workday hours x 30 calendar days x 20% conservative violation rate).

30. Although Circle K denies that any amounts are due to any putative class members (or even that there is a valid class to be certified), **the aggregate of the calculations above amounts to $5,193,355.73** which is above the $5,000,000 amount in controversy threshold necessary for CAFA jurisdiction. Therefore, removal is appropriate and proper.[2]

## COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL

31. In accordance with the Ninth Circuit rulings in *Reyes v. Dollar Tree Stores, Inc, Jordan v. Nationstar Mortgage LLC,* and *Kuxhausen v. BMW Fin. Servs*., Circle K timely filed this Notice with this Court after recently discovering new events and facts outside the temporal scope of 28 U.S.C. § 1446(b) which states "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise." *Reyes v. Dollar Tree Stores, Inc,* 781 F.3d 1185, 1186 (9th Cir. 2015*)*; *Jordan v. Nationstar Mortgage LLC,* 781 F.3d 1178, 1180 (9th Cir. 2015); and *Kuxhausen v. BMW Fin. Servs*., 707 F.3d 1136, 1140–41 (9th Cir. 2013).

32. Specifically, in *Jordan v. Nationstar Mortgage LLC*, the Ninth Circuit found removal outside the thirty (30) day window to be timely, based on the emergence of new and different grounds for removal two years after the complaint was filed in state court. 781 F.3d 1178, 1180 (9th Cir. 2015).

33. As in *Jordan*, Circle K is removing pursuant to CAFA within 30 days of learning information that demonstrates this matter satisfies the $5,000,000 amount in

---

[2] Circle K does not use Ms. McDonald's meal period claim to satisfy the amount in controversy threshold because Circle K reasonably understands that Ms. McDonald's complaint only takes issue with the payrate at which the meal period was paid, and not that meal period premiums were not paid at all. Specifically, Ms. McDonald contends that Circle K paid premiums at the base hourly rate instead of the regular rate. (Exhibit D - SAC, ¶ 30). Circle K cannot make any reasonable assumptions based on the rate difference between these two pay rates.

controversy requirement for CAFA, which was a CAFA threshold requirement not satisfied within 30 days of the filing of the original complaint due to a lesser amount of workweeks at issue. Accordingly, Circle K's Notice of Removal is timely filed.

34. Pursuant to 28 U.S.C. § 1441(a), the United States District Court, Southern District is the proper venue for this removal, because the SAC was filed in San Diego, which is within the boundaries of the Southern District of California.

35. In accordance with 28 U.S.C. § 1446(d), Circle K will provide written notice of the filing of this Notice of Removal to counsel of record for Ms. McDonald, and a Notice of Filing of Notice of Removal is being filed contemporaneously with the Clerk of the Superior Court of the State of California, County of San Diego.

36. If any question arises as to the propriety of the removal of this action, Circle K respectfully requests the opportunity to present a brief, evidence, and oral argument in support of its position that this case is removable.

37. By removing this action to this Court, Circle K does not waive any defenses, objections or motions available to them under state or federal law.

WHEREFORE, Circle K respectfully requests that these proceedings be removed to this Court.

Dated: April 11, 2022        **MCDERMOTT WILL & EMERY LLP**

By:  */s/Christopher Braham*
     MARIA C. RODRIGUEZ
     CHRISTOPHER BRAHAM
     ASHLEY ATTIA
     Attorneys for Defendant
     CIRCLE K STORES, INC.